**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| COYOTE PORTABLE STORAGE, LLC, DESERT PORTABLE STORAGE, LLC, and CACTUS PORTABLE STORAGE, LLC, | : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:09-CV-1152-AT |
| | : | |
| PODS ENTERPRISES, INC., as successor in interest to PODS, INC. | : : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

This matter is before the Court on Plaintiffs' motion to bar introduction of

expert testimony or, in the alternative, reopen discovery period [Doc. 78]. For the

reasons set forth below, Plaintiffs' motion to bar introduction of expert testimony is

**GRANTED** and the motion to reopen discovery period is **DENIED AS MOOT**.

**I.     Factual and Procedural Background**

This case involves a dispute over Franchise Agreements that Plaintiffs Coyote

Portable Storage, LLC ("Coyote"), Desert Portable Storage, LLC ("Desert"), and

Cactus Portable Storage, LLC ("Cactus") entered into with Defendant PODS

Enterprises, Inc. ("PODS"). PODS is a franchisor of storage and moving businesses

AO 72A
(Rev.8/82)

featuring the use of portable, self-contained storage units.   Under the Franchise

Agreements and Addenda thereto, Plaintiffs are required to pay PODS a monthly

royalty fee, which is calculated as a percentage of the individual franchisee's Net

Sales.  The Coyote and Desert Franchise Agreements define "Net Sales" as follows:

> The aggregate amount of sales, revenues, fees, charges and other
> consideration actually received for services and products sold in
> connection with operations conducted by the Franchised Business
> including income derived from sales at or away from the Franchised
> Business but excluding: (a) all federal, state or municipal sales or service
> taxes collected from customers and paid to the appropriate authority; (b)
> all insurance billed to and collected from customers and paid to the
> appropriate insurance company; (c) the amount of all customer refunds
> and adjustments and pre-approved, in writing, promotional discounts; (d)
> any amounts written off as bad debt expense; (e) revenue from the sale of
> Containers as part of a long distance move program organized and
> managed by [PODS]; and (f) any other sale of Containers, Lifts or other
> assets that [PODS has] approved in advance between [Franchisee] and
> other franchisees or [PODS].   The royalties and [Marketing and
> Advertising Fund] shall be calculated on the  "Net Sales", which is the
> total revenue as shown on the "Sales by Item Summary – Complete
> Summary", excluding sales tax and insurance as explained above, less
> discounts, credit memos or adjustments and bad debt expense, and monies
> received as part of the cross country move program, which are distributed
> separately on a monthly basis and not included in this summary.

(Compl. ¶ 20.)[1]   Thus, according to Plaintiffs, "monies received as part of the cross

country move program" are specifically excluded from the Net Sales on which

---

[1]      The definition of "Net Sales" in the Cactus Franchise Agreement is
identical to the definition set forth in the Coyote and Desert Franchise Agreements
except the last sentence includes the word "and" after "bad debt expense" and before
"monies received as part of the cross country move program."  (Compl. ¶ 22.)

AO 72A
(Rev.8/82)

royalties are calculated.   The Franchise Agreements provide that the agreements should be constructed under Florida law, and the parties agree that Florida law controls.

Plaintiffs brought this action on April 30, 2009, asserting, among other things, claims for breach of contract for improper calculation of royalties and failure to pay royalty rebates.  In addition, Plaintiffs seek an order declaring that "monies received as part of the cross country move program" are specifically excluded from Net Sales. In its answer to the complaint, PODS contends that

> Plaintiffs' claims premised on their construction of 'Net Sales' as excluding 'monies received as part of the cross country move program' fails because the definition of 'Net Sales' set forth in Plaintiffs' Franchise Agreement and Addenda is patently ambiguous, and was the result of a scrivener's error and mistake.  Further, the parties' course of dealings evidences that the parties did not intend to exclude 'monies received as part of the cross country move program' from the definition of 'Net Sales' for purposes of calculating royalties or any other purpose.  As a result, the Court should reform the definition of 'Net Sales' to reflect the parties' actual intent.

(Answer ¶¶ 20, 22, 26, Affirmative Defense A.)

According to the Scheduling Order entered by the Court on October 27, 2009, the case was assigned to a 4-month discovery term, beginning on December 30, 2009.  (Doc. 20.)  The parties sought and were granted three discovery extensions and the discovery period closed on December 30, 2010. (*See* Doc. 31, 39, 48.)   PODS designated its expert, Ross Guberman, on

AO 72A
(Rev.8/82)

November 24, 2010, with just over one month left in a discovery period that had extended 11 months at that point. The purpose of Mr. Guberman's testimony is to opine on the issue whether, under the Franchise Agreements, monies received from a cross country move program are excluded from Net Sales or included in Net Sales. (Doc. 84-1.) Plaintiffs deposed Mr. Guberman on December 21, 2010.

Plaintiffs filed the instant motion seeking to exclude the testimony of PODS' expert, Ross Guberman, on the basis that his purported testimony regarding the meaning and interpretation of the Franchise Agreements is inadmissible because it is the Court's job alone to interpret and give meaning to the terms of a contract. (Doc. 78.) PODS opposes the motion on the grounds that Mr. Guberman's testimony will assist the Court in its resolution of the proper interpretation of a key definition in the Franchise Agreements that govern the parties' business relationship.

## II.    Discussion and Order

### A.    Timeliness of Expert Designation

As an initial matter, although not raised in Plaintiffs' motion, with respect to the designation and use of expert witness testimony, Local Rule 26.2(C) provides:

4

AO 72A
(Rev.8/82)

Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery. Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

L.R. 26.2(C). A party's failure to comply with Local Rule 26.2(C)'s disclosure requirement is not justified when the party knew or should have known that an expert was necessary before the late stages of the discovery period. *Morrison v. Mann*, 244 F.R.D. 668, 672-73 (N.D. Ga. 2007) (Carnes, J.) (citing *APA Excelsior III, L.P. v. Windley*, 329 F.Supp.2d 1328, 1338 (N.D. Ga.2004) (stating, in declaring an untimely request to name expert witnesses unjustified under Local Rule 26.2C, "[t]he need for an expert should have been apparent during discovery.")).

The Court finds that PODS did not designate Mr. Guberman sufficiently early in the discovery process to provide Plaintiffs adequate time to identify any rebuttal experts without granting an additional extension of discovery. As PODS acknowledged in its response to Plaintiffs' motion, the proper interpretation of the Franchise Agreements is one of the central dispute in this litigation. Therefore, the need for expert testimony on this issue should have been apparent well before the virtual end of a 12-month discovery period. Even assuming PODS had complied with

5

Local Rule 26.2(C)'s disclosure requirement, the Court finds that the testimony of Mr. Guberman is inadmissible for the reason stated in Plaintiffs' motion and set forth below.

### B.      Admissibility of Mr. Guberman's Testimony

PODS appears to have retreated from its primary defense in this case – that the definition of "Net Sales" in the Franchise Agreements is patently ambiguous, was the result of a scrivener's error and mistake, and should be reformed by the Court. Relying on the opinion of Mr. Guberman, PODS now asserts that the definition of Net Sales is unambiguous when the rules of grammar are properly applied.  (Doc. 84.)

The court has broad discretion in admitting or excluding expert testimony, and its ruling shall be sustained unless manifestly erroneous.  *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).  Under the Federal Rules of Evidence, expert testimony is admissible if it is based on "scientific, technical or other specialized knowledge" and it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The construction of a contract is a matter of law for the court, and expert legal opinion is not admissible under Fed.R.Evid. 702.  *See Montgomery*, 898 F.2d at 1541 (finding that district court abused its discretion by allowing expert to testify about the scope of insurer's duty to defend under the insurance policy); *Plantation Pipeline Co.*

6

*v. Continental Cas. Co.*, 1:0-CV-2811-WBH, 2008 WL 4737163, *7 (N.D.Ga. July 31, 2008) (Hunt, J.) (concluding that expert opinions regarding coverage under an insurance policy are inadmissible as expert legal opinion); *Nova Cas. Co. v. Waserstein*, 2005 WL 5955694 (S.D. Fla. Sept. 7, 2005); *Southern Pine Helicopters, Inc. v. Phoenix Aviction Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (finding that expert opinion as to whether insured helicopter was being operated in violation of Federal Aviation Administration (FAA) regulations, within meaning of policy exclusion, was inadmissible, in action to recover on policy); *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n. 4 (6th Cir.2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible."); *Marx & Co. v. Diners Club, Inc.*, 550 F.2d 505, 508-11 (2nd Cir.1977) (holding that an expert's legal opinion on the meaning of contract terms was an invasion of court's authority to instruct the jury on the applicable law).

The use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir.1991) ("[A]n expert may opine on an

AO 72A
(Rev.8/82)

issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."); *see also Specht v. Jensen*, 853 F.2d 805, 807-10 (10th Cir.1988) (concluding that the expert was improperly allowed to instruct the jury on how it should decide the case). "The question of interpretation of the contract is for the jury, and the question of legal effect is for the judge. **In neither case do we permit expert testimony**." *Plantation Pipeline Co.,* 2008 WL 4737163, *7 (quoting *Loeb v. Hammond*, 407 F.2d 779 (7th Cir.1969) (testimony of attorney on legal significance of documents was properly excluded)) (emphasis added).

Under Florida law which controls in this case[2], interpretation of a contract, including determination and resolution of ambiguity, is a matter of law. *See, e.g., Montgomery*, 898 F.2d at 1541 n.9 (noting that Florida courts permitting expert testimony on the meaning of contracts are inconsistent with Florida Supreme Court cases holding that interpretation of contracts is a question of law to be decided by the judge); *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993); *Sproles v. American States Ins. Co.*, 578 So.2d 482, 484 (Fla. 5th DCA 1991); *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir.1985). In determining whether ambiguity exists, ordinary rules of construction require the court, first, to assess the natural or plain meaning of the policy language.

---

[2]     As noted at page 3 infra, the parties agree that the contracts at issue should be construed according to Florida law.

*Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d at 1382. "Further, ambiguity is not invariably present when a contract requires interpretation." *Id.*

Mr. Guberman's expert opinions do not create ambiguity in the Franchise Agreements and the Court need not consider those opinions to determine whether ambiguity exists. *See, e.g., Nova Cas. Co.*, 2005 WL 5955694, at *1; *The Travelers Indemnity Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 78 (2d Cir.1995) (although extrinsic evidence of custom and practice in the reinsurance industry may be used to interpret the meaning of ambiguous provisions, such evidence may not be used to alter the meaning of the contract). "Absent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." *E.g., TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981). Rather, the Court will assess the natural or plain meaning of the policy language to determine whether any ambiguity exists.

Mr. Guberman is an expert grammarian retained to address the grammatical nuances of a sentence at issue in the Franchise Agreements.[3] According to Defendant, his testimony does not offer legal opinions but "merely reviews the proper use of

---

[3]     Mr. Guberman is a graduate of the University of Chicago Law School, an active member of the D.C. Bar, and teaches an advanced seminar on legal drafting at the George Washington University Law School. His opinions are not based solely on his knowledge of the rules of grammar and punctuation, but are necessarily grounded in his legal knowledge and expertise.

AO 72A
(Rev.8/82)

commas, the correct syntactic interpretation of the sentence, and the essential rules of contract drafting that compel his conclusions." (Doc. 84.)  However, Mr. Guberman does not simply state the applicable rules of grammar as portrayed by Defendant in response to Plaintiff's motion.  Mr. Guberman offers his opinion on the legal effect of the contractual provision at issue – whether the term "Net Sales" in the Franchise Agreements includes "monies received as part of the cross country move program" for purposes of calculating the royalties paid by Plaintiffs to PODS.  In addition to analyzing the definition of "Net Sales" in the Franchise Agreements based on punctuation and syntax, Mr. Guberman construes the language of the Franchise Agreements by applying the cannon of contract construction known as *noscitur a sociis.*  (Doc. 84-1.)  The question of what the contract provision means is for the Court to determine.[4]  *E.g., Plantation Pipeline Co.*, 2008 WL 4737163, at *7; *Nova Cas. Co.*, 2005 WL 5955694, at *1-2.  The admission of such testimony would give the appearance that the court was shifting to the expert the responsibility to decide the case.  *Marx*, 550 F.2d at 510; *see also Specht*, 853 F.2d at 809.

Mr. Guberman is not testifying about a technical term in the contract which needs explaining.  Indeed, he acknowledges that "the disputed sentence comes from

---

[4]     Defendant asserts that the Franchise Agreements provide that any legal action in connection the agreement shall be tried to the court sitting without a jury and that the parties waived any right to trial by jury.  Plaintiffs do not appear to dispute this assertion despite having made a demand for jury trial in their Complaint.

AO 72A
(Rev.8/82)

a definition of 'Net Sales,' a common accounting term." (Doc. 84-1.)  The cases cited

by PODS in support of the proposition that courts have routinely stated that experts

can provide "helpful guidance" on technical aspects of the English language,

including, usage, grammar, and meaning are neither applicable to the issue here nor

binding on this Court.[5]

## III.   Conclusion

Plaintiff's motion to bar the introduction of the expert testimony of Ross

Guberman is **GRANTED** and the motion to reopen discovery period is **DENIED AS**

**MOOT**.

---

[5]       None of the cases involve a challenge to the admissibility of expert testimony on the interpretation of a contract. *See Central Elec. Co-op v. U.S. West, Inc.*, 2007 WL 4322577 (D. Or. 2007) (relying on expert analysis of meaning of words in a regulation); *Steak 'n Shake Co. v. Burger King Corp.*, 323 F.Supp.2d 983 (E.D. Mo. 2004) (noting that expert's testimony "provides helpful guidance as to how people use the term 'steakburger' and the roots of this generic term" on claim for trademark infringement); *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325-26 (8th Cir. 1984) (holding that expert in field of regional English, although not an expert in country music, was qualified to testify concerning the origin and use of the word "opry" in trademark infringement action).  Moreover, Defendant's reliance on trademark infringement cases is misplaced because the central issues in those cases – whether the use and understanding of a particular word and the correct characterization of a given term – are questions of fact. *See Hilton*, 724 F.2d at 1325-26.

AO 72A
(Rev.8/82)

**IT IS SO ORDERED,** this 16th day of May, 2011.

AMY TOTENBERG
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)